GEECHIE DEVAIN TEMPLETON
FULL NAME

COMMITTED NAME (if different)

USP·Coleman 1·P.O. BOX 1033·Coleman, Fl.
FULL ADDRESS INCLUDING NAME OF INSTITUTION

33521

# 15422-031
PRISON NUMBER (if applicable)

2019 APR 30 PM 2:07
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

FILED

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

GEECHIE DEVAIN TEMPLETON,

PLAINTIFF,

v.

JOSE ESQUETINI; ALAMILLA (FNU)· BLAIR
(FNU); RIVERA (FNU); MERISCAL (FNU); ·ParK
(FNU; JohnsTon (FNU); FAST (FNU);
LEEN (FNU); DELAY (FNU); REAMS (FNU)  DEFENDANT(S).

**CASE NUMBER**

EDCV19-00813
To be supplied by the Clerk

AB (AGR)

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** (Check one)

☐ 42 U.S.C. § 1983
☒ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes ☒ No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

2019 APR 29 PM 3:22
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

LODGED

BY

a. Parties to this previous lawsuit:
Plaintiff _____

_____

Defendants _____

_____

b. Court _____

_____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _____

f. Issues raised: _____

_____

_____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

   _____

3. Is the grievance procedure completed? ☒ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff *GEECHIE DEVAIN TEMPLETON*
(print plaintiff's name)

who presently resides at *USP Coleman I, P.O. Box 1033, Coleman, Fl. 33521*,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

*USP Victorville, Adelanto, Ca.*
(institution/city where violation occurred)

on (date or dates) _July 18, 2018_ , _____ , _____
                        (Claim I)                    (Claim II)              (Claim III)

**NOTE:**   You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant _Jose Esquetini_ resides or works at
    (full name of first defendant)

    _USP Victorville_
    (full address of first defendant)

    _Physicians Assistance_
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____
    _____

2.  Defendant _ALAMILLA (First Name Unknown) "FNU"_ resides or works at
    (full name of first defendant)

    _USP Victorville_
    (full address of first defendant)

    _Lt. Special Housing Unit_
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____
    _____

3.  Defendant _BLAIR (FNU)_ resides or works at
    (full name of first defendant)

    _USP Victorville_
    (full address of first defendant)

    _Nurse_
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____
    _____

---

**CIVIL RIGHTS COMPLAINT**

4. Defendant *RIVERA (FNU)* _____ resides or works at
   (full name of first defendant)
   *USP Victorville* _____
   (full address of first defendant)
   *Nurse* _____
   (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

5. Defendant *MERISCAL (FNU)* _____ resides or works at
   (full name of first defendant)
   *USP Victorville* _____
   (full address of first defendant)
   *Correctional Officer · Special Housing Unit* _____
   (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

on (date or dates) _July 18, 2018_____ , _____ , _____
                   (Claim I)                (Claim II)         (Claim III)

**NOTE:**   You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant _Park (fnu)_____ resides or works at
            (full name of first defendant)

    _USP Victorville_____
    (full address of first defendant)

    _Nurse_____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

2.  Defendant _Johnston (fnu)_____ resides or works at
            (full name of first defendant)

    _USP · Victorville_____
    (full address of first defendant)

    _Nurse_____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

3.  Defendant _Fast (fnu)_____ resides or works at
            (full name of first defendant)

    _USP · Victorville_____
    (full address of first defendant)

    _Nurse_____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

4. Defendant _LEEN (fnu)_____ resides or works at
   (full name of first defendant)

   _USP Victorville_____
   (full address of first defendant)

   _Nurse - Health Services Administrator_____
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

   Explain how this defendant was acting under color of law:

   _____

   _____


5. Defendant _Delay (fnu)_____ resides or works at
   (full name of first defendant)

   _USP Victorville_____
   (full address of first defendant)

   _Correctional Officer_____
   (defendant's position and title, if any)

   The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

   Explain how this defendant was acting under color of law:

   _____

   _____

**D. CLAIMS***

**CLAIM I**

The following civil right has been violated:

*Eighth Amendment Right Against Cruel and Unusual punishment.*

*[Please see Attached Memorandum in Support of Plaintiff's Bivens suit].*

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

*PLEASE SEE Attached Memorandum in Support of Plaintiff's Bivens Suit.*

*\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**CIVIL RIGHTS COMPLAINT**

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

_PLEASE SEE Attached Memorandum in Support of Plaintiff's Bivens Suit._

April 20, 2019
*(Date)*

Geechie W. Templeton
*(Signature of Plaintiff)*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA


GEECHIE DEVAIN TEMPLETON,
            Plaintiff,


-VS-


JOSE ESQUETINI; ALAMILLA (FNU);
BLAIR (FNU); RIVERA (FNU); MERISCAL (FNU);
PARK (FNU); JOHNSON (FNU); FAST (FNU);
LEEN (FNU); DELAY (FNU); REAMS (FNU)
            Respondents.
_____/


## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## CIVIL SUIT BROUGHT PURSUANT TO BIVENS


### I. INTRODUCTION


Comes Now, Geechie Devain Templeton, hereinafter "Templeton" and submits the instant motion/civil suit pursuant to Bivens. For the following reasons, facts, and laws this Court should find that Templeton has stated a claim in which relief should be granted, and further grant Templeton the relief he is requesting.

## II. STATEMENT OF FACTS

On or about July 18, 2018, at approximately 3:20 p.m.; While housed in the Special Housing Unit ("SHU"), on E-Range (Cell 226), in USP Victorville. Templeton slipped and fell coming out of the shower. As a result of this fall, Templeton tried to break his fall and ended up breaking his right hand. Through a small laceration, about one inch from Templeton's pinky knuckle, Templetion could observe a tiny piece of **bone** fragment protruding through his skin.

Almost immediately a slow, constant flow of blood began to come from the open wound. At approximately 3:25 p.m. the SHU's LT., Alamilla came on the range and Templeton stopped Alamilla, to inform him of the injury that had just occurred and showed Alamilla my right hand. Which was bleeding, swollen, and disfigured (pinky knuckle had been pushed back). Alamilla agreed to contact medical at Templeton's request, however, Alamilla or medical never returned.

For the sake of brevity, Templeton requests the Court to see the attached exhibit of Timeline of Geechie Templeton's Injury. [See Exhibit A]

## III. Jurisdictional Statement

The Prison Litigation Reform Act of 1995 mandates that an inmate exhaust such administrative remedies as are available'

-2-

before bringing suit to challenge prison conditions. Ross V. Blake, 136 S. Ct. 1850, 1854-55, 195 L. Ed. 2d 117 (June 6, 2016)(quoting 42 U.S.C. § 1997e(a)). Because Templeton has exhausted his administrative remedies, this Court has jurisdiction.

### a. Administrative Remedies

Templeton initiated his administrative remedies by handing his Informal Resolution (BP-8) to Alamilla on July 27, 2018, (due to Templeton being housed in the SHU, Templeton would have to wait to see Unit Team during their weekly walk through. However, no one from 6B's Unit Team had come through the SHU since July 18, 2018, the date Templeton injured his hand. So to file the BP-8, Templeton requested Alamilla to fax the BP-8 to Templeton's counselor Lopez, to which Alamilla obliged. Lopez brought Templeton's BP-8 back on 8-7-18 (8:55am)

Templeton filed his BP-9 on August 14, 2018, and it was received by the Warden on August 22, 2018. Templeton filed his BP-10 on August 27, 2018, and it was received by the Regional Director on September 18, 2018. Templeton filed his BP-11 on October 11, 2018, and it was received by the Central General Office on October 18, 2018. Templeton's initial administrative remedy was assigned Case Number 951088. [See Exhibit B]

-3-

## IV. EIGHTH AMENDMENT MEDICAL INDIFFERENCE

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment which prohibits cruel and unusual punishment. See Helling V. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); Farmer V. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The Eighth Amendment "... embo dies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle V. Gamble, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

A prison official violates the Eighth Amendment only when two requirement are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

A claim of medical indifference requires: 1) a serious medical need, and 2) a deliberately indifferent response by defendant. Jett V. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need may be shown by demonstrating that "failure

-4-

to treat a prisoner's condition could result in further
significant injury or the 'unnecessary and wanton infliction
of pain.'" Id.; See also McGuckin V. Smith, 974 F.2d 1050, 1059-
60 (9th Cir. 1992)("The existence of an injury that a reasonable
doctor or patient would find important and worthy of comment
or treatment; the presence of a medical condition that
significantly affects an individual's daily activities; or the
existence of chronic and substantial pain are examples of
indications that a prisoner has a "serious' need for medical
treatment.").

The deliberate indifference standard is met by showing:
a) a purposeful act or failure to **responsed to prisoner's pain**
or possible medical need, and b) harm caused by the indifference.
Id. "Deliberate indifference is a high legal standard." Toguchi
V. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this
standard, the prison official must not only 'be aware of the
facts from which the inference could be drawn that a substantial
risk of serious harm exists,' but that person 'must also draw
the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837).
"A defendant must purposefully ignore or fail to respond to
a prisoner's pain or possible medical need in order for
deliberate indifference to be established." McGuckin, 974 F.2d
at 1060.

### a. Bivens Claim

Under <u>Bivens V. Six Unknown Named Agents of Federal Bureau of Narcotis,</u> 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 469 (1971), a plaintiff may sue a federal official in his or her individual capacity for damages for violation of plaintiff's federal constitutional rights. See <u>Van Strum V. Lawn</u>, 940 F.2d 406, 409 (9th Cir. 1991). To state a cognizable Bivens claim, a plaintiff must allege that: (1) a right secured under the United States Constitution was violated, and (2) the violation was committed by a federal actor. Bivens provides that "federal courts have the inherent authority to award damages against federal officials to compensate plaintiffs for violation of their constitutional rights." <u>Western Center of Journalism V. Cederguist</u>, 235 F.3d 1153, 1156 (9th Cir. 2000)

### V. Personal Participation

As a threshold issue, a plaintiff must link the named defendant to the participation in the violation at issue. <u>Ashcroft V. Iqbal,</u> 556 U.S. 662, 667, 129 S. Ct. 1937, 173 L. Ed. 26 868 (2009); <u>Ewing V. City of Stockton</u>, 588 F.3d 1218, 1235 (9th Cir. 20090; <u>Simmons V. Navajo City, Ariz.</u>, 609 F.3d 1011, 1020-21 (9th Cir. 2010)

### a. Lieutenant Alamilla

On July 18, 2018, at approximately 3:35p.m. Lieutenant Alamilla (First Name Unknown "FNU"), was walking on E-Range

-6-

and Templeton's cellmate Justin Martin #16703-003 stopped "Alamilla" for Templeton. Through the cell door window (5"X18") Templeton explained to Alamilla that Templeton had just slipped and fell coming out of the shower and broke his hand. Templeton showed Alamilla his right hand and pointed out that a tiny piece of bone had actually came through the skin; this was supported by the bleeding coming from Templeton's hand. Alamilla acknowledged the swelling and the disformity (cause by the break) in Templeton's right hand around the pinky area and knuckle.

Templeton expressed to Alamilla that he was in need of emergency medical attention and in extreme pain. In fact, Templeton disclosed to Alamilla that on a scale of one to ten (ten being the worst) that Templeton was definitely at a ten. Alamilla stated that he would get in contact with medical. Alamilla never came back to Templeton's cell door to advise Templeton if Alamilla had in fact followed through with his words.

On July 19, 2018, at approximately 8:14a.m, Templeton (after being up all night in excruciating pain) once again was able to talk to Alamilla at Templeton's cell door. Templeton explained to Alamilla that Templeton really needed to see medical and needed some type of pain medication, and that Templeton had not, in fact, slept at all because of the pain in Templeton's hand.

-7-

At this time, Alamilla took no necessary step to get
Templeton any medical attention or pain medication. Subsequently,
at approximately 2:07p.m. (July 19, 2018), Templeton attempted
to talk to Alamilla once more to get medical attention and pain
medication, to no avail. As Alamilla only stopped long enough
to inform Templeton that he had "not done anything yet, because
[he] been very busy."

On July 23, 2018, at approximately 10:21a.m., Templeton
spoke with Alamilla and showed Alamilla Templeton's hand, which
had swelled enormously, turned black and blue around the pinky
and palm, and the pinky had bent dramatically inward. Templeton
(practically in tears; with no pain medication) begged Alamilla
to get Templeton medical attention. Alamilla informed Templeton
that Alamilla was going to contact medical and see if Alamilla
could get Templeton placed on the list to be pulled out to be
seen by the Physician's Assistance "P.A."; which would be in
two days, as the P.A.s only came to the SHU every week on
Wednesday.

On July 24, 2018, at approximately 11:14a.m, Alamilla advised
Templeton that Alamilla had contacted medical and medical
informed Alamilla that "they had been made aware of Templeton's
injury. Alamilla advised Templeton that if medical didn't pull
Templeton the following day, that Alamilla would get Templeton
to medical.

### b. Nurse Blair (FNU)

-8-

On July 18, 2018, at approximately 5:36p.m. Blair was making rounds on E-Range and Templeton stopped Blair at Templeton's cell door (226). Templeton showed Blair Templeton's hand and explained to Blair that Templeton was experiencing level 10 pain. Blair did acknowledge that Templeton had an injury to his hand and advised Templeton that Templeton needed to fill out a sick call request. To which Templeton handed Blair a sick call request that Templeton had previously filled out. Blair stated that Blair would give it to the P.A.

On July 19, 2018, at approximately 9:11a.m., Blair was conducting another walk through in the SHU, on E-Range (in the capacity of the Duty Officer). Once again, Templeton stopped Blair to show Blair Templeton's hand, request medical attention, and pain medication. Templeton explained to Blair that the pain was unbearable. Upon seeing Templeton's hand approximately fifteen hours later; Blair responded by "cracking" a very insulting joke. Specifically Blair stated, "I have good news and bad news. First, the good news, you definitely have something wrong with your right hand, that's clear. The bad news is that it will never be as bad as your face." Blair laughed in Templeton's face and walked away from Templeton's cell door.

On July 23, 2018, at approximately 4:49, Templeton stopped Blair once more at Templeton's cell door. Templeton, practically begging, and in tears, told Blair that Templeton's hand was

broken, (and had been for five days), was "hurting like hell" and asked Blair could Blair "please get Templeton in to see the P.A." Blair said that he would talk to P.A. and let them know.

### C. P.A. Jose Esquetini

On July 19, 2018, at approximately 8:40a.m, Esquetini was passing out medication on E-Range, and Templeton stopped Esquetini to show Esquetini Templeton's injured hand. Templeton asked Esquetini for pain medication, to be taken to medical to get treated for Templeton's injury, and handed Esquetini a second sick call request. Esquetini, pulling his eye glasses on, looked at Templeton's hand through the cell door window, and stated "that's a problem."

However, Esquetini further stated that "I'm not your P.A. but I'll give it to your P.A." Templeton asked Esquetini what else could Templeton do to be seen, because Templeton's P.A., Wolverton, was out and wouldn't return for another week? Esquetini replied "I'm not your P.A., it's not my problem." Templeton responded saying "my fucking hand is broken, Ray Charles can see that. It hurts like hell, and no one wants to take me to medical to get x-rayed or give me any pain medication." Esquetini, turned and walked away.

On July 25, 2018, at approximately 10:22am., Templeton was sitting in the Health Services waiting room, along with

-10-

seven or eight other "shackled" inmates, who had been brought from the SHU to see either the dentist, X-rays, or the P.A. After all the other inmates had been seen by their respective department, Templeton still had yet to be seen. Another inmate, (who was not brought in with Templeton and the other SHU inmates) came into the waiting area and began talking to one of the other inmates.

During this conversation, Templeton over heard the new inmate say that he had just came out of X-Rays, and the X-Ray technician said that he was the last inmate for her today. At this point, Templeton stood by the door leading to the exam rooms, waiting for the officer to come. Once the officer opened the door, Templeton asked the officer (Self(FNU) if Templeton was going to be seen. To which Self replied, "let me go check with Esquetini." When Self came back, he informed Templeton that Esquetini had said that Templeton wasn't on the list to be seen.

Templeton showed Self Templeton's swollen, black and blue hand and said "my hand has been broken for a week, it hurts like crazy, I need some pain medication, and I'm not going to leave medical until my hand is X-Rayed and I'm seen by the doctor." During this exchange, between Templeton and Self, Esquetini walked up.

Templeton asked Esquetini if Templeton was on the X-Ray

-11-

list, because Alamilla had informed Templeton that he was. Esquetini said that when he looked, he didn't see where any medical assessment had been conducted on Templeton's hand, and that Esquetini had called and spoke to some (unidentified) officer in the SHU and inquired as to why Templeton was in the infirmary, and "that" officer told Esquetini that he didn't know anything about it.

Templeton began to explain to Esquetini that Templeton had, in fact, showed Esquetini Templeton's hand on July 19, 2018, when Templeton had given Esquetini the second sick call request. Templeton continued to stress to Esquetini that there was just no way possible that Esquetini could not be aware of Templeton's injury, because Templeton had previously showed it to Esquetini and Esquetini had acknowledged that the injury was "a problem."

Esquetini began to become combative, by stating that when an incident occurs that requires medical attention, an inmate has to notify an officer, and the officer notifies medical so that a medical assessment could be conducted. Templeton explained to Esquetini that Templeton had done everything that was required of Templeton (requesting medical attention over 25 times from at least fourteen different officers and medical staff, submitting four sick call requests, and showing my hand and requesting pain medication for seven straight days), to no avail.

Esquetini finally stated in the presence of Heath Services Administrator Ms. Leen, the X-Ray Tech (name unknown), and Self, that Ms. Leen had verified that she was made aware of Templeton's injury, and that X-Rays were going to be taken of Templeton's hand. Subsequent to the X-Rays being taken, Esquetini saw the compound fracture break, and immediately began to process the paperwork to send Templeton out on an emergency "med-trip" to an outside emergency room/trauma center.

Templeton explained to Esquetini that Templeton had attempted to get this X-Ray, medical attention, and pain medication for the last seven days. To which Esquetini replied "I can't believe that you went that long without any pain medication."

### d. Nurse Rivera (FNU)

On July 19, 2018, at approximately 4:56p.m., Rivera was passing out evening medication on E-Range, and Templeton stopped Rivera at Templeton's cell door (226). Templeton showed Rivera Templeton's injured right hand and requested pain medication and to be taken to medical. Rivera responded by saying "Holy Shit!" What the hell did you do to your hand?" Templeton explained to Rivera how Templeton had slipped and fell coming out of the shower and broke Templeton's hand.

Templeton further explained that the bone had actually come through the skin and the laceration had not stopped

-13-

bleeding. (Even through Templeton had a band-aid on, the wound had continued to bleed for a complete 24 hours). Rivera stated that Rivera only passes out medication that is prescribed by a P.A. to which Templeton replied by asking Rivera, "how can I ever get some medication prescribed if the P.A. won't call me to medical?"

On July 20, 2018, at approximately 5:09p.m., Rivera was passing out evening medication on E-Range, and Templeton stopped Rivera at Templeton's cell door (226). Templeton requested pain medication because the pain in Templeton's hand was so bad, that Templeton explained to Rivera that Templeton had only slept for a total of three hours (sparingly) since injuring Templeton's hand. Rivera acted as if Templeton was irritating Rivera and stated that "I can't do shit until you see the P.A," and just walked away from Templeton's door.

On July 21, 2018, at approximately 4:20p.m., Rivera was passing out evening medication on E-Range, and Templeton stopped Rivera at Templeton's cell door (226). Rivera, upon observing the discoloration (black and blue) and deformity in Templeton's pinky and the extreme swelling in Templeton's hand. Rivera opened up the "trap-door" on Templeton's cell door and asked Templeton to let Rivera see Templeton's hand; Templeton complied by sticking the injured right hand out the "trap-door." Rivera grabbed Templeton's hand very carefully, however, the touch still enhanced the pain in Templeton's hand. Rivera said that Rivera just wanted to check the blood circulation in Templeton's finger,

-14-

as Templeton had brought to River's attention that Templeton
was losing feeling in the pinky. Upon squeezing the tips of
Templeton's finger, Rivera said "the blood circulation in your
pinky is sluggish."

Templeton begged Rivera for some form of pain medication,
because Templeton was in so much pain. Rivera said that "it's
clear your hand is broken, and I'm sure that you need something
for pain. But until you see the P.A. and they prescribe you
something, there's nothing that I can do." Templeton replied
by saying that "it has been four days already and I still
haven't gone to medical. Can you at least explain to the P.A.
that my hand is broken and I need to be seen?" Rivera just
replied by saying "I'll talk to them" and walked off.

On July 23, 2018, at approximately 9:42a.m., Rivera was
passing out morning medication on E-Range. Templeton stopped
Rivera at Templeton's cell door (226). Templeton once again
requested pain medication and to be taken to medical, and handed
Rivera a third sick-call request. Rivera just took the sick
call request and walked away from Templeton's door.

On July 26, 2018, at approximately, 6:14p.m., Rivera finally
brought Templeton a bottle of 800mg. Ibuprofen. Templeton does
bring to the attention of the Court that the Ibuprofen did
absolutely nothing to subside the pain that Templeton was
experiencing. For the next five days, Templeton continued to
complain of pain and stronger medication and was ignored to
either denied by medical staff repeatedly.

-15-

<u>e. Officer Meriscal [sic] (FNU)</u>

On July 20, 2018, at approximately 8:23a.m., Meriscal was conducting a routine walk through on E-Range and Templeton stopped Meriscal at Templeton's cell door (226). Templeton showed Meriscal Templeton's right hand trough the cell door window. Meriscal immediately responded by saying "what the fuck did you do to your hand?" Templeton explained to Meriscal that Templeton slipped and fell coming out of the shower. Templeton further explained to Meriscal that Templeton had been trying to get medical attention and get pain medication for two days, but was denied on every attempt. Templeton requested Meriscal to call medical because Templeton was in so much pain. Meriscal advised Templeton that Meriscal would advise medical.

At approximately 3:14p.m., the same day, Meriscal came back on E-Range and Templeton stopped Meriscal at Templeton's cell door (226). Meriscal informed Templeton that Meriscal had called medical and informed them that Templeton's hand was "swollen to to the size of a softball," but all medical said was for Templeton to put in another sick call request.

Templeton explained that the pain was so bad that Templeton couldn't sleep. Templeton asked Meriscal what else could Templeton do to get to medical to at least get some pain medication, because the only other recourse (taking the trap, pushing the panic button) would lead to Templeton receiving an incident report.

-16-

As Rivera, Blair, and Esquetini had all informed Templeton that "a swollen hand" is not considered an emergency to push the panic button. Meriscal just replied talk to the Lieutenant and walked away from the Templeton's door.

### f. Nurse Park (FNU)

On July 20, 2018, at approximately 9:16a.m., Park was passing out morning medication on E-Range and Templeton stopped Park at Templeton's cell door (226). Templeton showed Park Templeton's hand and explained to Park that the level of pain that Templeton was experiencing was a "ten." Templeton requested Park to get Templeton to medical as well as some pain medication. Templeton was in extreme pain and informed Park that Templeton's hand had been broken for two days. Park stated that "I can clearly see that something is wrong with your hand from the swelling and the color. But let me talk to the P.A. and lets see what they say."

Templeton advised Park that Templeton had showed his hand to Esquetini and gave Esquetini a sick call request the day before. Park asked Templeton what did Esquetini say. Templeton replied by telling Park that Esquetini had said that "it (the injury) was a problem," but that he wasn't Templeton's P.A., but that he would give it to her; even though she wasn't working

(and wouldn't be for another week).

Park just shook his head in disbelief and said "let me see what I can do", and walked away from Templeton's door. On July 26, 2018, at approximately 8:41a.m., Park was passing out morning medication on E-Range and Templeton stopped Park at Templeton's cell door (226). Templeton explained to Park that it had been eight days that Templeton has gone without any pain medication with a broken hand. Templeton gave Park a sick call request asking for pain medication.

Templeton asked Park if Park could "please bring some medication back today, because the pain was excruciating." Park took the request and said "let me check with the P.A., and walked away from Templeton's door.

### g. Nurse Johnston (FNU)

On July 21, 2019, at approximately 7:44 a.m, Johnston was passing out morning medication on E-Range, and Templeton stopped Johnston at Templeton's cell door (226). Templeton showed Johnston Templeton's right hand and requested pain medication, due to the fact that the pain was so bad and that Templeton needed to see medical. Johnston advised Templeton that Templeton needed to see the P.A. Templeton explained to Johnston that Templeton had, in fact, showed Esquetini Templeton's hand and no one has still brought Templeton any pain medication or called Templeton to medical. Johnston stated that there was noting she could do and then walked away from Templeton's cell door.

-18-

### h. Nurse Fast (FNU)

On July 24, 2018, at approximately 8:09a.m., Fast was passing out morning medication on E-Range, and Templeton explained to Fast the situation that had been going on with Templeton attempting to get pain medication and medical attention for Templeton's right hand. Fast advised Templeton that the Health Service Administrator (Leen) would be coming around later on, during the weekly walk through, and that Templeton needed to speak with her. Fast walked away from Templeton's cell door.

### i. Health Service Administrator LEEN (FNU)

On July 24, 2018, at approximately 9:51a.m., Leen was walking on E-Range and Templeton stopped Leen at Templeton's cell door (226). Templeton showed Leen Templeton's right hand and explained how bad it hurt. Templeton informed Leen that Templeton's hand had been broken for six days and the medical staff was ignoring Templeton's requests and the request made by officers, for pain medication and medical attention. Leen wrote Templeton's information on a yellow note pad and walked away from Templeton's cell door.

### j. Officer Delay (FNU)

On July 21, 2018, at approximately 3:50p.m., Delay was doing a routine walk through on E-Range, and Templeton stopped

-19-

Delay at Templeton's cell door (226). Templeton showed Delay
Templeton's right hand and explained that the pain was
unbearable. Templeton asked Delay if he could contact medical
because Templeton was in dire need of pain medication and medical
attention. Delay said that he would call medical and he did.

On July 26, 2018, at approximately 3:01p.m., Delay was
doing a routine walk though on E-Range, and Templeton stopped
Delay at Templeton's cell door (226). Templeton begged Delay
to call medical to try to get Templeton some form of pain
medication. As Templeton was in unbelievable pain. Delay stated
that Delay had to pass out razors and that Delay would forget,
so Templeton had to remind Delay. At approximately 4:42p.m.,
Templeton stopped Delay and aksed Delay if Delay had contacted
medical about getting some pain medication for Templeton? Delay
stated that he had not, because medical had not come to the
SHU yet, but that Delay would see what was up when medical came
to pass out evening medication.

### k. Lieutenat Reams (FNU)

On July 18, 2018, at approximately 6:02p.m., SHU Lieutenant
Reams was conducting a routine walk through on E-Range, and
Templeton stopped Reams at Templeton's cell door (226). Templeton
showed Reams Templeton's injured right hand; which was swollen
and bleeding, and explained to Reams that Templeton's hand was
broken and that the bone had come through the skin. Templeton
further explained that Templeton was experiencing level 10 pain
and really needed some medical attention and pain medication.

Reams replied by telling Templeton that there was nothing Reams could do that it was left to medical, and Reams walked away from Templeton's cell door.

Each government official, his or her title nothwithstanding, is only liable for his or her misconduct. OSU Student Alliance V. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012). The government's failure to satisfy its "obligation to provide medical care for those whom it is punishing by incarceration" can constitute an Eighth Amendment violation. Colwell V. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

To prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." Id. "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta V. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014). A prison official's action is deliberately indifferent if [they] "know of and disregards an excessive risk to inmate health and safety." Id.

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physician's provide medical care." Colwell, 763 F.3d at 1066.

Templeton avers that because Templeton first reported his broken hand to Alamilla, approximately five minutes after the

-21-

injury; while it was swelling, bleeding, and disfigured, made Alamilla aware of the "serious medical need "of Templeton. And the fact that Alamilla is a lieutenant and possessed the authority to 1) call to medical and request that a medical assessment be conducted on Templeton's hand; and 2) pull Templeton out of his cell and take Templeton to be medically assessed; but chose to ignore Templeton's serious medical need, did result in further significant injury and the unnecessary and wanton infliction of pain. Peralta, 744 F.3d at 1081.

Templeton further alleges that lieutenant Reams became aware of Templeton's "serious medical need" at approximately 6:02 p.m., somewhat two hours, and forty-two mintues after Templeton broke his hand. When Reams became aware of Templeton's injury, Templeton's hand was extremely swollen, bleeding, disfigured and at a level 10 in pain. Because Reams possessed the authority, as a lieutenant, to 1) call to medical and request that a medical assessment be conducted on Templeton's hand; and 2) pull Templeton out of his cell and take Templeton to be medically assessed, and chose not to utilize this authority; and instead made the conscious decision to ignore Templeton's serious medical need. Did result in further significant injury and the unnecessary and wanton infliction of pain to Templeton's hand. Peralta, 744 F.3d at 1081. Templeton states that for these reasons, Alamilla and Reams were deliberately indifferent to Templeton's serious medical needs. Colwell, 763 F.3d at 1066.

-22-

Templeton states that because Esquetini, Blair, Rivera, Park, Johnston, Fast, and Leen were/are medical personal, employed in Health Service Department, Templeton must show that they chose, in conscious disregard of an excessive risk to Templeton's health, a course of treatment medically unacceptable under the circumstances. Toguchi V. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

Here, Templeton avers that Esquetini, Blair, Park, Johnston, Fast, and Leen became aware of Templeton's serious medical need, (with the exception of Fast and Leen) within 17 hours 20 minutes, two hours 16 minutes, 25 hours 36 minutes, 41 hours 56 minutes, and 64 hours 24 minutes, respectively, of Templeton' breaking his hand. Because Templeton's hand exhibited extreme medical symptoms, i.e., severe swelling, loss of feeling, discoloration (black and blue) of palm and pinky, disfigurement of pinky, dislocation of pinky knuckle, and extreme pain; that any lay person, and especially trained medical staff, knew required immediate medical attention, Esquetini, Blair, Rivera, Park, Johnston, Fast and Leen (Fast and Leen became aware of Templeton's serious medical need approximately 24 hours before Templeton was taken to medical on 7-25-18 at 9:35a.m) ignored Templeton's need for immediate medical attention.

Thus this course, or the lack thereof, of treatment was medically unacceptable under the circumstances. And this egregious lack of medical treatment subjected Templeton to

-23-

further significant injury and the unnecessary and wanton
infliction of pain. Peralta, id. supra. id The fact that
Esquetini, Blair, Rivera, Park, Johnston, Fast, and Leen were
deliberately indifferent when they both denied and delayed
Templeton medical treatment for a "serious medical need",
violated Templeton's Eighth Amendment right, which prohibits
cruel and unusual punishment. See McKinney, 509 U.S. at 31;
Farmer, 511 U.S. at 832; See also Gamble, 429 U.S. at 102. It's
clear, that the medical personal, listed above, who left
Templeton in a cell for 7 (Seven) days, with a compound fracture
[See Exhibit -C, Mills Surgery Center, Operative Report; and
X-Rays], with no medical treatment could result in further
significant injury (the loss of an extremity (right pinky)).

Templeton avers that Meriscal and Delay became aware of
Templeton's serious medical need on July 20, 2018 (8:32a.m)
July 21, 2018 (3:50p.m) respectively. Because Meriscal and Delay
were only officers, they did not possess the authority of
Alamilla and Reams, as lieutenants, to pull Templeton from the
cell to be taken to medical, without authorization. However,
once Merscial and Delay become aware of the facts (Templeton's
hand was swollen, black and blue, disfigured and hurt extremly)
from which the inference could be drawn that a substantial risk
of serious harm exists; and drew that inference; Toguchi V.
Chung, 391 F.3d 1051, 1057 (9th Cir. 2004); (the inference was
made Meriscal and Delay acknowledge Templeton's serious medical

-24-

need and making the decision to call and notify medical)).

The fact that Meriscal and Delay admitted calling medical and notify medical that Templeton had a serious medical need, and was aware that medical did not act properly or promptly to Templeton's medical need. Mersical and Delay were obligated under Program Statement PS § 3420.11, standard of Employee Conduct, to "report any violation, or apparent violation, of standards of conduct to their Chief Executive Officer or another appropriate authority." P.S. § 3420.11(1)(b)(vi) under Attachment A; Standard Schedule of Disciplinary Offense and Penalties, number 7) "In attention to duty"; 15). Endangering the safety of others through carelessness or failure to follow instructions; and 56)'s Failure to report a violation of the standards of conduct, or retaliation or discrimination against those who make such a report, lists violation of Meriscal and Delay. As Meriscal nor Delay reported medical's refusal or act of ignoring Templeton's serious medical need to their C.E.O. And pursuant to P.S. § 5270.11(13) § 541.32(a) ... Emergency medical care is always available.

Meriscal and Delay's failure to report the medical department exposed Templeton to further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059-60.

-25-

## VI. Witnesses

### a) Inmate Justin Lemar Martin #16703-003

Inmate Martin was Templeton's cellmate on July 18, 2018, through August 1, 2018, when the instant matter took place. Templeton had to rely on Martin to aid Templeton in the smallest of tasks. As Templeton's right hand could not be used in anyway. Martin provided Templeton with an affidavit [See Exhibit D Affidavit of Justin Lemar Martin] stating the incident and the subsequent events that has led to the instant civil suit against the aforementioned parties in their individual capacity. Templeton states that Martin has no self-serving or personal interest in this matter and this Court should accept Martin's affidavit as true.

### b) Sammy Bohanon #27337-479

Inmate Bohanon was in cell 227, on E-Range, next door to Templeton in cell 226. On July 18, 2018, when the instant matter was initiated. Bohanon's cell door window was in such close proximity of Templeton's cell door window, that it afforded Bohanon the opportunity to see any individual that stood in front of Templeton's window. It further allowed Bohanon to hear any conversation being held between Templeton and any individual in front of Templeton's cell. Bohanon provided Templeton with an affidavit [See Exhibit E-Affidavit of Sammy Bohanon] stating the events, from the instant matter, as best he remembers, leading to the instant civil suit against the aforementioned

parties in their individual capacity. Templeton states that
Bohanon has no self-serving or personal interests in this matter
and this Court should accept Bohanon's affidavit as true.

### c. Esequiel Pena #18394-180

Inmate Pena was in cell 239, on E-Range, across the tier
from Templeton in cell 226, on July 18, 2018, through August
1, 2018, when the instant events unfolded. Because Pena's cell
was right across from Templeton's cell, Pena could look out
of his cell door window and into Templeton's cell door window.
This allowed Pena to hear any conversation being held between
Templeton and any individual at Templeton's door. Pena provided
Templeton with an affidavit [See Exhibit F-Affidavit of Esequiel
Pena] on his own free-will. Pena does not have any self-serving
or personal interests in this matter and this Court should accept
Pena's affidavit as true.

### d. Officer Velez (FNU)

Velez was an officer who worked in the SHU on occasions.
On July 21, 2018, at approximately 5:16p.m., Velez (Ojee) came
on E-Range and Templeton stopped Velez at Templeton's door.
Templeton showed Velez that Templeton had injured Templeton's
hand. Templeton explained to Velez that Templeton had injured
his hand two days prior, coming out of the shower. Velez stated
that he could tell that Templeton's hand was broken, just from

looking at it. Velez said he would call and contact medical for Templeton. Velez did come back and inform Templeton that medical had been notified.

On July 23, 2018, at approximately 5:51p.m., Velez was doing a routine walk through on E-Range and Templeton stopped Velez at Templeton's door. Templeton explained to Velez that Templeton's hand had gotten worse, and that medical was still denying Templeton medical attention and pain medication. Velez said that he would contact medical once again on Templeton's behalf. Velez further advised Templeton that Templeton should write medical up.

Velez informed Templeton that if medical didn't provide Templeton with the medical attention and pain medication that Templeton needed that Velez would write medical up as well. On July 25, 2018, at approximately 6:10p.m., Templeton was being returned to his cell on E-Range; after coming back from a med-trip, having a splint placed on, his right hand; by Velez. While walking up the stairs and down E-Range, Velez admitted to Templeton that he had gotten "chewed out" and that "they" were mad at Velez because he had written medical up for denying me medical treatment.

Velez further stated that he had been working in the system for over twenty-years and he knows how this goes, and that what they were doing was wrong. Velez does not have any personal interests in this matter and should be requested to submit an affidavit; as well as a copy of the report he wrote up.

-28-

## VII. Relief Requested

Templeton request that this Court 1) find that summary judgment is not warranted in this action, because Templeton has stated a claim of "deliberate indifference" against the defendants in their individual capacity; 2) find that Templeton's claim of deliberate indifference is a claim in which relief can be granted; 3) find that the actions of the defendants violated Templeton's Eighth Amendment Constitutional right; 4) find that Templeton is entitled to be monetary compensated $21,000,000.00; 5) and find that Templetion is entitled to punitive damages.

### a. Monetary Compensated

Templeton request that this Court award Templeton twenty-one million dollars in United States Currency, based on the evidence supported in the record. The defendant's total disregard for human decency that left Templeton in a cell with a compound fracture to his right hand for seven days with no medication, and seven days with only Ibuprofen and Tylenol should not be ignored. Templeton seeks monetary compensation for each of the screws placed in his hand, the "T-plate" placed in his hands, deliberate indifference, pain and suffering, cruel and unusual punishment, and medical negligence.

### b. Punitive Damages

Punitive damages are a "particular remedial mechanism normally available in the federal courts," and are especially appropriate to redress the violation by a Government official of an [inmate's] constitutional rights. In <u>Smith V. Wade,</u> 461 U.S. 30, 56, 75 L.Ed. 2d 633, 103 S. Ct. 1625 (1983), the Supreme Court held that a jury may be permitted to assess punitive damages in an action under 42 USCS § 1983, when the defendant's conduct is shown to be motivated by evil motive, or intent, or when it involves reckless or callous indifference to the federally protected rights of others. The Court further held, that this threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness. id.

Templeton request that once this Court finds that the defendant's deliberate indifference violated Templeton's constitutional Eighth Amendment right; further find that Templeton is entitled to punitive damages. "Once a plaintiff has successfully met the "deliberate indifference" standard under Eighth Amendment requiring that the conduct be "wanton," <u>Wilson V. Seiter</u>, 501 U.S. 294, 302, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), there is little more that such a plaintiff would need to prove to establish a convincing argument for an award of punitive damages.

For the following reason, facts, and laws this civil suit pursuant to <u>Bivens</u> should be granted.

-30-

Respectfully Submitted,


s/ _Geechie W. Templeton_

Geechie DeVain Templeton
#15422-031
U.S.P. Coleman #1
P.O. Box 1033
Coleman, FL 33521


## CERTIFICATION OF SERVICE

I, Geechie DeVain Templeton, do hereby certify and declare that on this 23rd day, ~~January~~ April G.D.T. 2019, that a true and correct copy of the instant Bivens Civil Suit, Memorandum, Exhibits and Affidavits in support have been mailed to the following:

    Clerk of Court
    Central District of California
    George E. Brown, Jr. U.S. Courthouse
    3470 Twelfth Street
    Riverside, CA, 92501-3801

By placing a pre-paid postage envelope in the prison legal mail box, at USP Coleman -1.

Signed under Penalty of Perjury Pursuant to § 1746 on this 23rd day, ~~January~~ April G.D.T., 2019.


s/ _Geechie W. Templeton_
Geechie DeVain Templeton
#15422-031
U.S.P. Coleman #1
P.O. Box 1033
Coleman, FL 33521


-31-

Time line of GEECHIE TEMPLETON's Injury
U.S.P. Victorville, SHu, E-Range 226

7-18-18

3:20 p.m.- I slipped & fell coming out of the shower. I
immediately noticed the bone coming out of the skin (a very tiny
piece), the swelling & pain in my right pinky & on the side
of my hand immediately below my right pinky.

3:25 p.m.- Showed SHu Lt. Alamilia my right hand & explained my
pain level of 10, & requested to see medical. He never came back
to speak to me or inform me of what medical said.

5:36 p.m.- Showed Nurse Blair my right hand, told him of my
level 10 pain, & handed him a Sick-Call. He said that he
would give it to the P.A. (physicians assistance)

6:02 p.m.- Showed evening SHu Lt _____, my right hand &
explained my level 10 pain & requested to see medical. He
told me that there was nothing that he could do; that it
was left up to medical.

7-19-18

8:14 a.m.- I spoke with SHu Lt. Alamilia once again & requested
to see medical to get pain medication for my right hand.

8:40 a.m.- Showed P.A. Esquetini my hand, handed him a second
Sick Call, & requested pain medication. He said that he was

*Exhibit A1*

Continued from 1st page. Templeton's Injury Timeline

not my P.A. but he would give "my" P.A. the sick call

9:11 am Showed Nurse Blair once again my hand & explained that the pain was unbearable. He cracked a very insulting joke; "I have good news & bad news. First the good news, you definitely have something wrong with your right hand, that's clear. The bad news is that it will never be as bad as your face.

2:07 pm
Tried to talk to Lt. Alamilia to ask if he had contacted medical. He stopped long enough to tell me that he hasn't done anything yet because he had been very busy.

4:56 pm-
Showed Nurse Rivera my swollen right hand & requested pain medication. He said that he only passes out medications that the P.A. prescribes. I asked him, "how can I ever get something prescribed if the P.A. won't call me to medical"?

7-20-18

8:32 am
Talked to & showed C.O. Menicel the swelling in my right hand & requested to see medical. He advised me that he would go call medical.

*Exhibit A2*

Page Two: Templeton's Injury Timeline

9:16 a.m.

Showed nurse Park my right hand & explained my level of pain of 10 (ten) & requested to see medical & pain medication.

3:14 p.m.

Spoke to C.O. Mericael again & he informed me that he had called medical & explained to them that my hand looked like a "damn softball" but all they said was put in another sick call.

5:09 p.m.

Spoke with Nurse Rivera once more, & requested pain medicine as I had not slept but 3 (three) hours in the last 2 (two) days. Rivera acted imitated & said that he can't do anything until I see the P.A. He just walked away from my cell door.

7-21-18.

7:44 a.m.

Spoke with Nurse Johnston, showed her my right hand & requested pain medication. Explained that the pain was so bad & that I needed to see medical. She told me that I needed to see the P.A. I explained that I had showed P.A. Esquetini my hand & handed him a sick call two (2) days earlier. She stated that there was nothing that she could do & then walked away from my cell door.

Exhibit A3

3:50 p.m.

Spoke with C.O. Delay, requested to see medical, pain medication; asked would he call medical. He said that he would call medical.

4:20 p.m.

Nurse Rivers inspected my right hand (physically) He conducted a "blood circulation exam" (squeezing the tips of my fingers) & said that the C.O.'s had called him (Delay) & informed him of my hand. He stated that the blood circulation in my right pinky was "sluggish".

5:16 p.m. Asked C.O. Ojee if he could contact medical for me.

7-22-18

Inmate Templeton slept all day, after an inmate kept hearing Templeton complain about the pain, the inmate "Charleston" gave Templeton an allevel [s.i.c]. Templeton did not speak to anyone on this day.

7-23-18

9:42 a.m.

Handed Nurse Rivers a third, sick call & requested pain medication.

10:21 a.m.

I Talked to Lt. Alamilia & he informed me that he was going

*Exhibit A4*

Page Three. Templeton's Injury Timeline.
continued from page Two.

• to contact medical & see if they could get me on
the P.A.'s list to be seen.

3:51 p.m.
   Spoke to shu Lt. Dejesus & asked to see medical. He said
that he had heard about it & he thinks they (C.os) had
already notified medical.

4:49 p.m.
   Spoke to Nurse Blair once again & told him that my
hand was broke, "hurting like hell" & asked him could he
please get me in to see the P.A. He said that he would
talk to the P.A. & let them know.

5:51 p.m.
   Spoke with C.o. ajee & asked if he could call medical
because the pain in my hand was so bad & no one had done
anything for the past (5) five days. I explained that I was
losing feeling in my right pinky finger.

7-24-18

8:09 a.m.
   Spoke with Nurse Fast & explained to him what was
going on with me trying to get medical attention for my

Exhibit A5

right hand Nurse Fast explained to me that I needed to speak with the Health Services Administrator Ms. Leen, who would be walking through the stu on the weekly walk throughs.

9:51 am:
   Ms. Leen comes through & I showed her my right hand, explained how bad it hurt, & told her that it had been broke for (6) six days, but the medical department was ignoring all of my requests, & those requests I made on my behalf by the Lt (Alamilia) & other c.o.s. She wrote my name & number on a yellow note pad & walked off.

11:14 am.
   Spoke to Lt. Alamilia & he informed me that he had contacted medical & they said that they had been notified. He said that if medical didn't pull me out on Wednesday; that he would get me down there.

7-25-18
   9:12 am Toled to the Lt.          , who was the Acting Captain & I showed him my right hand & explained to him that I had broken my hand a week ago & the pain was at a level (10) ten & I needed to see medical. He took my name (but did not write it down) & walked away

Exhibit A6

Page four. Templeton's Injury Timeline

9:35 a.m.

I was pulled out of the cell to go see medical by C.O. Campos & C.O. Razo (to the recreational cages). After having the shu restraints removed & exchanged for transport restraints. I asked C.O. Long if he could loosen the cuffs on my wrists. As he did so he squeezed my right hand & I jumped in agonizing pain. I explained to him that he had just squeezed my hand that was the purpose of me going to medical.

10:22 a.m.

I asked P.A. Esquetini if he could check to see if I was on the x-ray list, because Lt. Alamilla had informed me that I was. Esquetini eventually came & told me that he didn't see no medical assessment of my hand, & that the Shu Office that he spoke with over the phone said that "they" didn't know anything about it. I began to explain to Esquetini that he had saw my hand on 7-19-18 when I gave him the second sick call. Esquetini was trying to advise me (in front of Ms. Leen) that when something has occured that requires medical attention that I have to notify an officer; the officer notifies medical so that a medical assessment could be done. I explained to Esquetini that I had done all that I was supposed to do for (7) seven days and no one has come to see me. He said that Ms. Leen had verified that she was made aware of my hand & that they were going to go ahead & do the x-ray this day.

Exhibit A 7

12:40 p.m.

X-Rays were taken of my right hand & during the x-rays, the X-ray Tech. tried to adjust my hand in a certain position to take an x-ray; & I yelled & jumped in pain. She rolled her eyes in frustration. When she put the X-ray pictures on the screen, she & the officer working in medical both said "shit" & shook their head & she (X-ray Tech) said "Now I know why you're in so much pain. You have a really nasty break".

18
7-26-18.

I have still not been prescribed any pain medication

8:41 a.m.

I gave Nurse Park a sick call request asking for pain medication. I asked him if he could bring it back to me today. I told him that the pain was very excruciating.

1:24 pm.

Spoke with C.O. Zilliox & requested him to contact medical to see if they could get me some pain medication. He said that he would, but also for me to fill out a cop-out.

1:49 p.m.

I asked C.O. Cong if he could ask C.O. Zilliox if he had contacted medical because I still hadn't been given any medication

Exhibit A8

Page five: Templeton's Injury Timeline

2:29 p.m.

Spoke with C.O. Marroquin & asked him if he could call medical & ask if they could provide me with some pain medication. My pain level is through the roof.

2:57 p.m.

I saw the orderlie on the tier & I asked him if he could contact the officer for me, to see if I could get some medication.

3:01 p.m.

Spoke to officer Delay & "begged" him to call medical to try to get some pain medication. He said that he had to do razors (pass them out to the shu inmates) so he would forget & I needed to remind him.

4:42 p.m.

Asked officer Delay if he contacted medical about some pain medication for my right hand. He said that he had not because "they" had not come yet, that he will see what's up when they come to pass out evening meds.

6:14 p.m.

Nurse Rivera brought me a bottle of 800 mg. Ibuprofen.

Exhibit A 9

...TMENT OF JUSTICE                                    **REQUEST FOR ADMINISTRATIVE REMEDY**
...eau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: TEMPLETON, GEECHIE, D.          15422-081     SHU-E-228    U.S.P. Victorville
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT              INSTITUTION

**Part A– INMATE REQUEST** My request Informal Resolution for deliberate indifference, medical negligence, pain and suffering, and cruel and unusual punishment has not been resolved. Due to the deliberate indifference of P.A. Esquetini, Nurses Blair, Rivera, Johnston Park, and Fasti, and officers Lt. Alamilia, Lt. Reams, Lt. Dejesus, Meriscal, ~~____~~, and Dolasi. I experienced unbearable pain from July 18, 2018, to August 1, 2018, when I had to have six pins and a plate put in my right hand. On more than twenty five (25) occassions I requested medical attention to the aforementioned and I was denied every time. Despite my hand being the size of a "softball", bruised, bleeding and me begging for pain medication. I would like to be financially compensated six (6) million dollars (one million per screw),(5) five million dollars for deliberate ~~indifference and pain and suffering~~, ten (10) million dollars for ~~pain and~~ cruel and unusual punishment and medical negligence. I would like for the medical staff aforementioned to lose their license to practice medicine and be barred from working in the medical field permanently.

          8-14-18                                                    _Geechie D. Templeton_
          DATE                                                        SIGNATURE OF REQUESTER

**Part B– RESPONSE**



          DATE                                              WARDEN OR REGIONAL DIRECTOR
*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                              CASE NUMBER: 951088-F1

Exhibit B1

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: AUGUST 22, 2018

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      VICTORVILLE USP

TO  : GEECHIE DEVAIN TEMPLETON, 15422-031
      VICTORVILLE USP    UNT: 6 B    QTR: Z05-230LAD
      P.O. BOX 5400
      ADELANTO,  CA 92301


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 951088-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : AUGUST 22, 2018
SUBJECT 1      : REQUESTS FOR MONETARY COMPENSATION
SUBJECT 2      : MEDICAL CARE - DELAY OR ACCESS TO
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

*Exhibit B2*

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: TEMPLETON, GEECHIE, D     15422-051     SHU-E-230     Victorville-USP
_____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**
On August 14, 2018, I handed my informal resolution to C.M.C
Mrs. Borne, with my BP-9 to give to Unit Manager Perez. On July 27, 2018, I
gave Lt. Alamilia my informal resolution to fax to 6B Counselor Lopez, Which was
returned to me by Lopez on August 7, 2018 (8:55 am). The following week, dur-
walk through I turned in the response from my "8" (the medical stated that
I was scheduled for surgery on August 1, 2018 (the same day of the surgery)). Th
Rejection of my BP-9 is in error, as the filing of my "8" is documented, regard-
of the institution's administrations attempt to hinder me from correctly filing
administrative remedies. i.e. I am being denied copies by my Unit, Team, thus
forcing me to file my originals. The deliberate indifference, medical negligence
and violation of 8th Amendments Rights of Templeton by P.A. Esquetini, Nurses Blairs,
Rivera, Johnston, Park, & fast, and officers Lt. Alamilia, Lt. Reams, Lt. DeJesus, Merisce
and Delay cannot be overlooked by the F.B.O.P. and the UNITED STATES. The fac
that I reported my injury five minutes after it occured and more than 25 times afterward t
the aforementioned, and was refused medical attention, forcing me to endure unbearab

8-27-18     ...See attached page...     Geechie Templeton
_____
DATE     "CASE NUMBER 951088-F1"     SIGNATURE OF REQUESTER

**Part B - RESPONSE**

SEP 18 2018

_____
DATE     REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE     CASE NUMBER: 951088-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____

Exhibit B3

_____
DATE     SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN     BP-230(13)

Attachment to BP-10 to Case Number 951088-F1

pain for a duration of two weeks (July 18, 2018 to August 1, 2018). After suffering a "boxer's break" compound fracture, that resulted in the bone coming through my skin, that was ignored by the aforementioned medical staff and officers. For more than (7) seven days, Templeton exhibited extreme medical symptoms (i.e. severe swelling, lost of feeling in my right pinky, dislocation of my right pinky, discoloration of the palm of my hand) that any lay person, and especially trained medical staff, knew or should have known required immediate medical attention. The egregious lack of medical treatment that caused Templeton to endure such excruciating pain for (2) two weeks must not be ignored. I would like to be financially compensated six (6) million dollars (one million per screw), five (5) million dollars for deliberate indifference and pain and suffering, ten (10) million dollars for cruel and unusual punishment and medical negligence. I would like for the aforementioned medical staff to have their license to practice medicine revoked and be barred from working in the medical field permanently.

Exhibit B4

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 20, 2018

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      WESTERN REGIONAL OFFICE

TO  : GEECHIE DEVAIN TEMPLETON, 15422-031
      VICTORVILLE USP    UNT: 6 B    QTR: Z05-231LAD
      P.O. BOX 5400
      ADELANTO,  CA 92301


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 951088-R1        REGIONAL APPEAL
DATE RECEIVED  : SEPTEMBER 18, 2018
SUBJECT 1      : REQUESTS FOR MONETARY COMPENSATION
SUBJECT 2      : MEDICAL CARE - DELAY OR ACCESS TO
INCIDENT RPT NO:

REJECT REASON 1: CONCUR WITH RATIONALE OF REGIONAL OFFICE AND/OR INSTITUTION
                 FOR REJECTION. FOLLOW DIRECTIONS PROVIDED ON PRIOR REJECTION
                 NOTICES.

Exhibit B5

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: **TEMPLETON, GEECHIE, D**  **15422-031**  **SHU-E-233**  **Victorville-USP**
  LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL** Remedy ID #: 951088 R1 - In reference to the Region's Rejection and demand to follow prior rejection notices. I have previously filed an Administrative Remedy in the unprofessional and unethical actions of CMC Ms. Borne's mishandling and or intentional misplacement of my Informal Resolution filed with my BP 9 on August 14, 2018, when I handed them both Ms. Borne. I am currently waiting on a Memo from Unit Manager Perez, averring that I did, in fact, submit an "8" on this matter. Furthermore, I am asking this agency to investigate my deliberate indifference, medical negligence, and Eighth Amendment right violations claims on P.A. Esquetini, nurses Blair, Rivera, Johnston, Park, and Fast and officers Lt. Alamilla, Lt. Ream, Lt. Dejesus, Meriscal, and Pelay. And further find that all of the aforementioned are guilty of violating one or all of the above mentioned claims. Thus granting "Templeton" the "six million dollars (one per screw), five million do. for deliberate indifference and pain & suffering, and ten million dollars for cru and unusual punishment and medical negligence. Note: I am being denied copies to provide, so I am enclosing originals. I am requesting that you office provide me with the necessary copies.

**10-11-18**
  DATE

Geechie DeVain Templeton
  SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DLR

**RECEIVED**

OCT 1 8 2018

Administrative Remedy Section
Federal Bureau of Prisons

_____
  DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: **951088-A1**

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____          *Exhibit B6*
  DATE          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 26, 2018

RCVD NOV 8 '18

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : GEECHIE DEVAIN TEMPLETON, 15422-031
      COLEMAN I USP    UNT: C/D    QTR: D01-112U
      P.O. BOX 1023
      COLEMAN, FL 33521


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 951088-A1       CENTRAL OFFICE APPEAL
DATE RECEIVED  : OCTOBER 18, 2018
SUBJECT 1      : REQUESTS FOR MONETARY COMPENSATION
SUBJECT 2      : MEDICAL CARE - DELAY OR ACCESS TO
INCIDENT RPT NO:

REJECT REASON 1: CONCUR WITH RATIONALE OF REGIONAL OFFICE AND/OR INSTITUTION
                 FOR REJECTION. FOLLOW DIRECTIONS PROVIDED ON PRIOR REJECTION
                 NOTICES.


*Exhibit B7*

# MILLS SURGERY CENTER
# OPERATIVE REPORT

PATIENT NAME: TEMPLETON, GEECHI
DATE OF BIRTH: 10/08/1976
MEDICAL RECORD NUMBER: 440
DATE OF SURGERY: 08/01/2018

| | |
|---|---|
| SURGEON: | DANIEL LEE, M.D. |
| ANESTHESIOLOGIST: | NYUNT LWIN, M.D. |
| ANESTHESIA: | GENERAL |

**PREOPERATIVE DIAGNOSIS:**   Right 5th metacarpal shaft fracture.

**POSTOPERATIVE DIAGNOSIS:**   Right 5th metacarpal shaft fracture.

**OPERATION PERFORMED:**   Open reduction and internal fixation of right 5th metacarpal shaft fracture.

**ASSISTANT:** None.

**EBL:** Minimal.

**IV FLUIDS:** See Anesthesia note.

**URINE OUTPUT:** Not recorded.

**DRAINS:** None.

**SPECIMENS:** None.

**COMPLICATIONS:** None.

**IMPLANTS:** One 0.8-mm T-plate from Acumed plate was utilized with appropriate locking and nonlocking screws.

**HISTORY AND INDICATIONS:** Mr. Templeton is a 41-year-old male, who sustained an injury to his right 5th metacarpal shaft in an altercation. The patient actually reported seeing the bone poke through the skin. He was treated in the ER for IV antibiotics. He was then splinted, and we saw him fairly acutely as an outpatient. We recommended operative treatment. The risks, benefits, and complications of the procedure were explained to the patient in detail. The patient understood and gave informed consent.

Exhibit C 1

# MILLS SURGERY CENTER
# OPERATIVE REPORT

**PATIENT NAME:** TEMPLETON, GEECHI
**DATE OF BIRTH:** 10/08/1976
**MEDICAL RECORD NUMBER:** 440
**DATE OF SURGERY:** 08/01/2018

**DESCRIPTION OF THE PROCEDURE:** The patient was identified in the preoperative holding area and brought back to the room. He was induced under general anesthesia. IV antibiotics were given at this time. A timeout was called which correctly identified the patient and the site of surgery. This was agreed upon by Anesthesia, Nursing and the attending surgeon. Tourniquet was inflated to 250 mmHg.

A 5-cm incision was made overlying the 5th metacarpal. The skin and subcutaneous tissues were dissected through. Extensor tendons were then mobilized. The fracture site was then defined. It was a fairly oblique fracture. There was a dorsal butterfly fragment and a fairly short distal fragment. However, we were able to reduce it using an axial K-wire placed through the metacarpal head into the metacarpal base.

The T-plate from the Acumed set was utilized. The 0.8 plate was deemed to be most appropriate. It was then cut short so about 3 screws would be proximal to the fracture site. It was then placed upon the dorsal surface of the bone. The position of the plate was checked under fluoroscopy.

A single nonlocking screw was placed distally in order to get distal fixation of the plate to the bone. This was followed by a nonlocking screw proximally. This allowed for rigid fixation of the fracture.

Two remaining proximal screws were then drilled and filled in a standard fashion. These were nonlocking screws. The 2 distal screws in the T component of the plate were drilled and filled in standard locking fashion. The original nonlocking screw which was somewhat long was changed now to a locking screw as well.

The wound was then thoroughly irrigated at this time. Hemostasis was obtained. The tourniquet was let down. Final x-rays were taken. Fracture was anatomically reduced. It was stabilized with the plate.

Exhibit C 2

# MILLS SURGERY CENTER
## OPERATIVE REPORT

PATIENT NAME: TEMPLETON, GEECHI
DATE OF BIRTH: 10/08/1976
MEDICAL RECORD NUMBER: 440
DATE OF SURGERY: 08/01/2018

The wound was then closed in layered fashion using 2-0 Vicryl, 4-0 Vicryl, and 5-0 Monocryl sutures. Standard soft dressings were applied after the Marcaine was infiltrated for postoperative analgesia. The drapes were then taken down. The patient was then placed in an ulnar gutter splint. He was then awoken and taken to the PACU in stable condition.

DANIEL LEE, M.D.

DL/yve  080418-014
D: 08/04/2018 09:41:14
T: 08/04/2018 20:23:38

Exhibit C3

| Date & Time | Operative Note |
|---|---|
| | **Pre-Op Diagnosis:** (R) IMC Fx |
| | **Post-Op Diagnosis:** Same |
| | **Operative Procedure:** OR IF (R) I MC |
| | **Surgeon:** ___   **Assistant:** |
| | **Anesthesia:** ___   **Anesthesiologist:** |
| | **Blood Loss (fluid management)** ___ |
| | **Complications (to include management of complications):** |

Physician's Signature     8/1/18 Date     1200 Time

**MILLS SURGERY CENTER**

Templeton, Geschie Devsin
DOS 10/6/76 M 41 Inmate # 15422-031
DOS 8/1/18   MR 440
Daniel Lee, M.D.

**Post-Operative Note**

Exhibit C 4

**MILLS SURGERY CENTER**
**HISTORY AND PHYSICAL**

| T: 9.5 | BP 98/10 | Pulse 64 | Resp 10 | SaO₂ 97 % | Height 6' 2" | Wt. 195 lbs |

**Chief Complaint:** (R) Lmc R

**Prior surgeries or procedures:**

(✓) No known allergies  / Or  Medication allergies and reactions:

( ) No known latex allergy / Or Reaction:

**Medications (including blood thinners & NSAIDS, OTC & herbs/supplements: See Medication Reconciliation Record**

**Physical limits:** none   mobility - cane   walker   wheelchair   crutches   scooter
speech   visual - glasses/ contacts   hearing – aid left/right

**Pain:** none   (0-10) _____ Location, quality, duration, what improves, what worsens:

| History | NO | YES | Physical findings if not within normal limits: |
|---|---|---|---|
| Cardiac/circulatory | NO | YES | |
| HTN | NO | YES | |
| Respiratory (asthma) | NO | YES | |
| Sleep apnea | NO | YES | Using CPAP or BIPAP   no   yes |
| Diabetes/endocrine | NO | YES | oral meds   insulin  + diet controlled |
| Gastrointestinal/renal | NO | YES | |
| GU/pelvic/rectal | NO | YES | |
| Infectious disease – TB, hepatitis, HIV, shingles, drug resistant organisms | NO | YES | |
| Neurological | NO | YES | |
| Musculoskeletal | NO | YES | |
| Hx or risk of Falling | NO | YES | |
| Hematological | NO | YES | |
| Cancer | NO | YES | |
| Autoimmune disorder | NO | YES | |
| Mental health problems/ treatment | NO | YES | |
| Other/Family /Social history | NO | YES | |
| Alcohol use | NO | YES | drinks/week  x _____ yrs |
| Tobacco use | NO | YES | PPD x _____ yrs |
| Recreational drug use | NO | YES | x _____ yrs |

**Findings/Diagnosis:** Fx

**Plan:** ORIF

**Notes:**

Signature: _____ Date: 7/31/18

**Day of Surgery**

**Informed Consent:** I have talked to the patient/representative, in simple layman terms about the proposed procedure. I have presented the alternative treatments, risks and benefits. S/he has had an opportunity for questions and has consented.

Signature: _____ Date: 8/1/18 Time: 1000

**H&P reviewed, patient examined;** there has been no change in the patient's condition since H&P was completed, or changes noted here:
Signature: _____ Date: 8/1/18 Time: 1000

**Anesthesia plan:** I concur with the plan of anesthesia or sedation.
Signature: _____ Date: 8/1/18 Time: 1000

Templeton, Gecchie
DOB. 10.08.1976

**Patient Identification**
DOS: 08.01.2018

Templeton, Geechie Devain
DOB 10/8/76 M 41 Inmate # 15422-031
DOB 8/1/18   MR 440
Daniel Lee, M.D.

Exhibit C5

## IMPLANT RECOr

| TYPE | CAT# | LOT# |
|---|---|---|
| Acumed T-Plate 0.8mm 7005-08003 | | |
| 3012-150 XX 1.5mm Hexalobe Lag Screws 9 X 1.5mm X1 | | |
| 3004-150 XX 1.5mm Hexalobe Multiscrews 9 X 1.5mm X1 14 X 1.5mm X 2 12 X 1.5mm X1 | | |
| 3012-230 XX Hexalobe Lag Screw 2.3mm X10 X1 | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Templeton, Geschie Devain
DOB 10/6/75 M 41 Inmate # 15422-031
DOS 8/1/18  MR 440
Daniel Lee, M.D.

Exhibit C6






Exhibit C7

# MILLS SURGERY CENTER
## POST OPERATIVE CARE INSTRUCTIONS

☑ Your Doctor wants to see you in _10-14_ (days/week(s) Please call _____
for your appointment.

☑ Observe the operative site for signs of infection:  ☑ Fever of 101 or higher
*(These signs and symptoms usually become*  ☑ Excessive pain
*apparent in 36-48hours after surgery)*  ☑ Redness or swelling
☐ Foul odor or drainage

☑ Some bleeding is normal.  Report EXCESSIVE bleeding to your doctor!!

☑ Keep operative area clean and dry.

☑ You may remove the dressing _0_ days, ☐ or until you are seen by your physician.

☑ Keep the extremity elevated on a couple of pillows for the next few days.*(Above the level of the heart if possible)*

☑ Apply ice pack (or cold therapy unit) to operative site as directed.  _20 min every hour x 24hrs_

☐ Fill your prescriptions and start medication as the label directs.

☑ No aspirin or aspirin containing medication such as Empirin, Anacin, Excedrin or Bufferin Tylenol or Extra strength Tylenol may be taken.

☑ No Tub Baths until you have seen your doctor.

☑ Diet: start slow with liquids-soup, juice, crackers and jello, if you tolerate these without nausea, then start on regular food. *(Do not start with any spicy or greasy foods as this may cause nausea)*

BECAUSE ANESTHETIC MEDICATION WILL BE IN YOUR BODY FOR THE NEXT 24 HOURS **DO NOT**
◊ Drive a car, operate machinery or power tools
◊ Drink alcoholic beverages.
◊ Make important decisions or sign any legal paperwork.
◊ Remain alone.  You need to have a responsible adult with you.

**IF ANY PROBLEMS ARISE OR IF YOU HAVE FURTHER QUESTIONS, PLEASE CALL YOUR DOCTOR IMMEDIATELY OR GO TO THE NEAREST EMERGENCY ROOM..**

☐ ARM SLING: ☐Y/☐N   ☐LEFT   ☐RIGHT

OTHER INSTRUCTIONS: _Ice pack to arm 20min x1hr. then as needed_
_after 24hr. Keep elevated above Chest & light_
_activity. Keep dressing on._

Patient _____   Date/Time _8-1-18_ _0810_

Responsible Adult _____   Date/Time _8-1-18  0810_

Witness _____

---

Mills Surgery Center
(ORTHO post op instr)
hand, arm, shoulder

Templeton, Geschie Devain
DOB 10/8/78 M 41 Imate # 15422-031
DOS 8/1/18  MR 440
Daniel Lee, M.D.

Exhibit C 8

I JUSTIN, Lemar, Martin, being of Sound, mind, body and Soul & being of the Legal age of 29, I here by declare that on this the 24th day of July, 2018 that I wrote this affidavit. The following is a true Statement as best as I know it. This not meant to deceive or mislead anyone in any manner.

ON July, 18, 2018 at around 3:20PM in Victorville U.S.P.'S Special Housing Unit (S.H.U.) I WAS Cellies with inmate Geechie, Devain, Templeton #15422-031, in cell 226 on E-RANGE. When he slipped coming out of the shower and fell and broke his right hand below his pinky. I actually SAW the tip of his bone come through the SKING as it began to bleed and swell to the size of a baseball. About Five to Seven minutes passed and the Shu LT, ALAMILIA came by and Geechie Stop him and Showed him his right hand and requested medical attention.

FOR the first three days my cellie did not Sleep because of the pain. Mr. Templeton requested medical attention to every nurse, P.A.'s and staff officer who came by. On at least 15 to 20 occassions, my celly Stopped, Showed, talked, and requested to so to medical to various, ("Rivera, Johnston, PArk, blair, P.A. ESquetim") "officers" ("DELAY, Osee, MEricel, LT Alamilia, LT Degesus") and even with all of them know-ing about his Broken hand, Seeing his hand Swollen and bleeding. He never was Seen or taken out to see MEDICAL.

Exhibit D

This patten continued up untill JULY 25, 2018
when LT. ALAMILIA had MY celly Geech added to
the medical call out list I have never ever seen a
human being suffer bad as he did in so much pain
for so long the way my cellie did for over
the week of JULY 18, 2018, through July, 29, 2018.

FURTHER AFFIANT SAYETH NAUGHT

Signed under penalty of perjury
pursuant to §174b on this 24th
day of JULY, 2018.

S/ Justin Lemar Martin #16703-003
Justin Lemar Martin

I, Sammy Bohanon #27337479, being of sound mind and having attained the legal age of 18. Do hereby declare that I on this 28th day July, 2018 did write the following statem which is true to the best of my abi I recall the following...

On July 18, 2018, I was housed in cell #227 on E-range, in the Special Housing Unit (SHU) in Victorville U.S.P. My next door neighbor in cell #226, was Geechie DeVain Templeton #15422031. At around 3:25pm or 3:30pm, I was waiting to speak with the SHU Lt, Alamilia at my door. When I looked through my cell door window and saw that Lt, Alamilia had stopped next door to talk to my neighbor Templeton.

At this point I could hear Templeton talking as if he was yelling to Alamilia that he had just fell out of the shower and broke his hand, And that he needed to go to medical to get checked and get pain medication.

When the evening medication was being passed out by nurse Blair, Templeton stopped him and explained to him that he had just broken his hand and needed medical attention and then handed Blair a sick-call request

Exhibit E   over →

The next morning I once again heard Templeton complaining to Alamilia about his broken hand and the pain. About 30 minutes later a Esquetini came to pass out medication, and Templeton stopped Esquetini and practically begged him to get him to medical to X-ray his hand, and get some pain medication, then handed Esquetini a sick-call request. To this, I could clearly hear Esquetini say "I'm not your P.A. I'll give this to your P.A. and yes I can see the swelling but I'm not your P.A.

I saw and heard Templeton stop and request medical attention to nurse's Rivera, Johnston, Park, Blair, Fast, and P.A. Esquetini, as well as Lt. Alamilia, Lt. DeJesus, C.O.s Delay Mericel, Ojee, and for a week straight he (Templeton) did not receive any medical treatment. The nurses just all seem to tell Templeton to get some Ibuprofen off commissary. Which he could not do for a whole week. We had just went to commissary on 7-18.

Signed under penalty of perjury Pursuant to §1746 on this 28th day of July, 2018

S/ _Sammy Behanen_

On 7-21-18 while on E. Range -239 across the hall from inmate Templeton I heard and saw him complaining to both medical staff and officers about his hand being broken and him being in alot of pain It stuck with me because I to had medical issues of my own and could not believe he couldnt get help.

my name is Esequiel Parra 18394-180
This is true and factual.
Thank you.

Exhibit F

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | TEMPLETON, GEECHIE DEVAIN | | | Reg #: | 15422-031 |
| Date of Birth: | 10/08/1976 | Sex: M | Race: BLACK | Facility: | VIP |
| Note Date: | 07/26/2018 08:38 | Provider: | Esquetini, Jose PA-C | Unit: | Z05 |

Admin Note - Orders encounter performed at Health Services.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**        **Provider:** Esquetini, Jose PA-C

Seen at ER yesterday with  appointment tomorrow for casting

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Orthopedist | 07/27/2018 | 07/27/2018 | Emergent | No | |

**Subtype:**

Other non-surgical Offsite appt, NOS

**Reason for Request:**

Pte seen at ER for fracture of 5th metacarpal. Follow up appointment tomorrow for casting.

**Provisional Diagnosis:**

Fracture 5th metacarpal right hand.

**Copay Required:** No        **Cosign Required:** Yes

**Telephone/Verbal Order:**   No

Completed by Esquetini, Jose PA-C on 07/26/2018 08:44

Requested to be cosigned by  Peikar, Nader MD/CD.

Cosign documentation will be displayed on the following page.

*Attachment~1*





Geechie Devain Templeton
#15422-031
USP Coleman-1
P.O Box 1033
Coleman, Fl
33521

Clerk of Court
Central District of California
George E. Brown, Jr. U.S. Courthouse
3470 Twelfth Street
Riverside, Ca
92501-3801

RECEIVED
CLERK, U.S. DISTRICT COURT
APR 29 2019
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION BY DEPUTY

PRIORITY MAIL
For Domestic Use Only

UNITED STATES POSTAL SERVICE
Retail

P
PRIORITY MAIL 2-Day®
US POSTAGE PAID
$9.30
Origin: 34287
04/24/19
1130690824-2

EXPECTED DELIVERY DAY: 04/26/19
C002
0 Lb 15.50 Oz
1006

SHIP
TO:
3470 12TH ST
RIVERSIDE CA 92501-3801

USPS TRACKING NUMBER

9505 5153 8161 9114 1520 30